# Exhibit D

## Attendance and Tardiness

Excessive absenteeism and tardiness have a negative effect on our productivity and quality of service. For this reason, Dollar General expects its employees to be present for work when scheduled and to call their manager if for any reason they cannot be at work at the scheduled time.

Employees are expected and required to report to their designated work locations at the time their work activity is to begin. In the event an employee cannot report to work as scheduled, the employee must notify his or her manager at least one hour prior to the scheduled reporting time or be prepared to provide evidence of extenuating circumstances. In the event an employee must leave work prior to the completion of his or her work schedule, the employee must notify his or her manager prior to leaving. Walking off the job will be considered job abandonment.

The employee is responsible for communicating with his or her manager on a regular basis. In all cases of an employee's absence or tardiness, the employee should provide his or her manager with a reason for the absence and if applicable, the probable duration of the absence. This will enable the workload to be redistributed if necessary. If the absence is related to a medical reason, the Company reserves the right to request medical documentation regarding the absence.

Excessive absenteeism, unless for an approved leave of absence, will be evaluated on a case by case basis to determine the need for performance counseling. An employee who is absent without notice or authorization from his or her manager for three (3) or more consecutive scheduled workdays will be considered to have voluntarily resigned from his or her job.

Missed work includes tardiness, partial day absences, unexcused absences or failure to report to work as required. All employees who have established a pattern of excessive tardiness and/or absenteeism may be subject to disciplinary action up to and including termination.

NOTE:   *Qualified absences related to FMLA or other approved absences taken in accordance with Company policy or pursuant to applicable law for eligible employees will not lead to performance counseling.*

## Performance Coaching and Counseling

Performance coaching and counseling are used to document unacceptable performance, conduct or attendance issues and to positively reinforce performance improvement. The performance, conduct and attendance standards contribute to the ability to perform effectively and create a positive, equitable and values driven environment. The appropriate level of performance counseling is determined by, among other things, the severity of the attendance, conduct or performance issue and the employee's previous attendance, conduct or performance.

The purpose of the performance coaching and counseling process is to communicate unacceptable performance, conduct or attendance issues and develop an action plan which results in standard or above standard performance. However, these procedures are guidelines only and the Company reserves the right to terminate any employee at any time and without issuing any particular level of performance counseling when the Company determines it to be appropriate under the circumstances.

NOTE:   *Employees on written or final counseling or who rated Needs Improvement or Unsatisfactory on their last performance review may not transfer to another position until a minimum of 6 months or the end of the plan (whichever time is greater).*

## Reasons for Counseling and/or Termination

The Company has listed below a number of the offenses that we consider to be serious enough to result in discipline, up to and including discharge, even for a single offense. Of course, not all circumstances can be reduced to a single list, and management reserves the right to dispense discipline according to its own sole discretion according to the

facts of a particular situation. The action that will be taken in a particular case will depend on the circumstances involved, including the severity of the offense, the employee's past record and other relevant factors.

The following are NOT a complete list but are illustrative of those offenses for which even the first offense may lead to performance counseling and/or termination from the Company:

- Violation of the Code of Business Conduct and Ethics
- Violation of the Computer and Telecommunications Security Policy
- Violation of the Solicitation and Distribution Policy
- Excessive absence or tardiness or an unapproved absence from work
- Taking unauthorized or extended breaks
- Walking off the job or leaving your work area during scheduled work hours without authorization
- Working overtime without authorization
- Working hours for which you did not sign in or out (working off the clock) or instructing or allowing someone to work off the clock
- Allowing a minor to perform work for the Company (except in those states or locations approved by the Company as part of the Hiring Minors program)
- Accepting merchandise for time worked
- Allowing friends or family who are not employees to work
- Substandard performance
- Personal use of Company credit card or having your credit card suspended due to late payments
- Providing employment references or letters of recommendation for current or former employees to other organizations
- Violation of Company Personal Appearance and Dress Code Policy
- Unauthorized personal use of Company telephones
- Gambling on Company property or at Company sponsored events
- Violation of Anti-Discrimination and Harassment Policy (including sexual harassment or any other form of harassment, discrimination, retaliation or inappropriate conduct) or the failure to report the harassment or intimidation of another employee
- Immoral or indecent conduct on Company property or at Company sponsored events
- Use of profane or abusive language in the workplace including use of racial, gender, ethnic or religious slurs
- Willful destruction or theft of your coworker's or Dollar General's property
- Violation of the Workplace Violence Policy, such as threatening another employee or person
- Falsifying Company documents, including failing to accurately record your work hours or signing in and out for other employees
- Fighting or inciting a fight or any other behavior which is disruptive or dangerous while on duty or on Company property
- Failure to report an accident involving yourself or any vehicle or equipment you may be operating
- Violation of Drug and Alcohol Policy, including failure to abide by the Drug and Alcohol Testing Policy, possession of, consumption of, or being under the influence of alcoholic beverages or illegal drugs or prescribed controlled substances while on Company premises, or on Company business (including in vehicle)
- Insubordination, including, but not limited to, failure to follow the reasonable instruction of a manager
- Possession of a weapon (examples include: gun, knife, stun gun, mace, pepper spray and other weapons) Company owned or leased property or at Company sponsored events, unless otherwise required by law
- Failure to protect or mishandling of Company property or assets (including, but not limited to: borrowing money from the Company, giving keys to unauthorized personnel, gross neglect or carelessness)
- Sleeping or loafing on the job
- Driving in an unsafe manner on Company property
- Unauthorized or excessive personal use of cellular phones and/or pagers (beepers) during work hours
- Violation of the Travel and Expense Policy
- Driving on behalf of the Company without a valid driver's license

July 1, 2010

13

- Providing or agreeing to provide false or misleading information pursuant to a Company investigation or inquiry
- Stealing merchandise or money from the Company (Dollar General prosecutes employees caught stealing from the Company)
- Release of proprietary and/or confidential information (which is described in the Proprietary and/or Confidential Information Policy)
- Failure to submit, follow-up on or meet Dollar General hiring criteria related to background checks or drug test
- Violation of the Wage and Hour Policy
- Violation of the Smoking/Tobacco Policy
- Stealing from Dollar General employees, customers, or vendors
- Failure to cooperate with a police investigation involving the Company or failure to cooperate in any Company investigation
- Using Dollar General's name for personal use (e.g., credit card, phone card or long distance calls)
- Any unlawful activity on Dollar General property (including in Company cars) or being convicted of a crime which violates the Company's hiring policies
- Giving out an employee's address or phone numbers or other personal information without their permission
- Failure to report knowledge of another employee's theft
- Posting proprietary and/or confidential information (which is described in the Proprietary and/or Confidential Information Policy) or making derogatory comments on message boards or other public sites
- Violation of the Company Car Policy
- Violation of the Returned Check Policy
- Violation of the Search Policy
- Willful defrauding of the Employee Benefits Plan
- Violation of any other Company policy

## Internal Applicant Policy

In accordance with our values, we actively encourage and promote internal movement for our employees' career growth. Dollar General has developed an Internal Applicant Policy which allows for an orderly and equitable system of identifying and placing the most qualified person in each opening.

### Eligibility
You are eligible to post for an open position if you:
- Are an active regular full-time or part-time employee
- Have been in your current position for at least 90 days in the DC's, 6 months in a retail position or 1 year in the SSC
- You meet the minimum qualifications listed for the position on the job description
- Rate as "Good" or higher on your last Performance Review
- Are not on Written Performance Counseling

### Job Posting Procedures
- To search and apply for open positions, go to dollargeneral.com.
- Submit your resume or complete a candidate profile.
- When prompted, check the box "Currently Employed with Dollar General" to indicate you are an internal applicant.
- Notify your current manager that you intend to apply for an open position before submitting your application.

Questions regarding open positions may be directed to:

SSC – recruitdg@dollargeneral.com

DC's – Local Human Resources department

July 1, 2010

14

# Exhibit E



EXHIBIT 19
Witness Eddy
Date 6/19/12
Connie Nichols, Rpr.

```
DOLLAR GENERAL STORE #09880
5807 MASON DIXON HWY
BOX 48
BLACKSVILLE  WV 26521
(304) 616-0206

BOUNTY 1000 SHEET 12                    6.75 S
7264594910008
S DECOR TOWEL 3                         1.75 S
0721403897B3-1
JUMBO FEMUR BONE                        3.50 S
0495215107111-1
62 FRUIT PUNCH 320Z                     1.00 S
0520003219B2-1
MINUTE MAID LEMONADE                    1.25 S
0250000538181-1
62 GLACIER FREEZE 32                    1.00 S
0520003201521-1
EVERPET MINI DOG TRE                    1.00 S
0791001035771-1
EVERPET STEAK SNACKS                    1.00 S
0791001035841-1
EVERPET MINI DOG TRE                    1.00 S
0791001035771-1
EVERPET STEAK SNACKS                    1.00 S
0791001035841-1
BLUE BIRD CREAMY CUP                    2.50 N
0723590070161-1
NATURL'S OWN HONEY WH                   1.00 S
0722503706B1-1
ABSORBINE ULTRA PATC                    2.50 S
0114441570210
SON PORK SKIN BONE
0159589767101

SUBTOTAL                              $26.25
STATE TAX                              $1.37
Other                                 $27.73
TOTAL                                 $27.73
Visa ************9705
EXP/FRY **/** SWIPED
AUTH# 531290
REFERENCE# 57711746

ITEMS 14
2011-05-26   21:03:11   09880 02    6505
```

We value your opinion!
You can be the next $1,000 winner!
We have 3 winners per month.
Just complete a survey about today's
...

# Exhibit G

On May 18th 2011 I, Debra Eddy, Manager at Blacksville Dollar General 9880 stopped by the store to purchase a heating pad. There weren't any on the shelf so I told Lisa I was going to look in the backroom (stockroom) to see if we had any. There wasn't any so I picked up a couple of the heat wraps. When I went to pay for them I had forgotten the machines were down and told Lisa Barr (lead clerk) that I would stop back in to pay for them because I had no cash and it was around closing time. I had worked from 6am Tuesday the 17 through Wednesday 12:30 AM (18 hrs) and my back was really hurting. I did pay for them on May 26th not any sooner because I was off work on doctors care and physical therapy. I just returned to work today May 27th. I recieved a call about the matter and I did produce the reciept to Scott. I would never steal from myself and that is what I would be doing. I have been with the company as a manager for almost 6 years. I have achieved alot since I have been with the company. I need my job

EXHIBIT 2D
Witness Eddy
Date 6/16/12
Connie Nichols, Rptr.

DG48_000093

and I do appologise for the decision I made on that day May 18th. but I was in severe pain.

I take pride in my store and work very hard to keep it. Yes I get frustrated when I have to work 16 & 18 hr days but I would never make it up by stealing. I make an honest living by giving my all to this company and if you feel that you need to punish me by firing me then do what you think is best.

To the best of my knowledge what I have written in this letter is the truth and I will swear by it.

Debra L. Edely
Manager of 5yrs 9mths
May 27, 2011

I would like to add that there were 2 bags of dog treats also which were also paid for.
Also I have bought phones stereos and other things from my pocket on my own to make things more pleasurable for my customers & employees

DOLG_000094

# Exhibit I

**Prescription 1:**

CHARLENE HORAN, M.D.
DEA # ___ LIC. # 12054(WV)
VALDELINE MUEHL, M.D.
DEA # ___ LIC. # 23895(WV)
KAY KELLY, F.N.P., -BC
DEA # MK0231691 RXA 1128 EXP: 8/11
1929 MASON DIXON HIGHWAY
CORE, WV 26541
(304) 879-5020

NAME: Debra Eddy
ADDRESS: 2-19-62
DATE: 5-18-11

℞ Lortab 7.5/500mg
½ to 1 p.o.
q6-8° (#12)
twelve

☑ 1-24
☐ 25-49
☐ 50-74
☐ 75-100
☐ 101-150
☐ 151 and over
___ Units

☐ Label
Refill (NR) 1 2 3 4 5

Kay B Kelly RN FNP-BC
(Signature)

1CIM1352093

**Prescription 2:**

CHARLENE HORAN, M.D.
DEA # ___ LIC. # 12054(WV)
VALDELINE MUEHL, M.D.
DEA # ___ LIC. # 23895(WV)
KAY KELLY, F.N.P., -BC
DEA # ___ RXA 1128 EXP: 8/11
1929 MASON DIXON HIGHWAY
CORE, WV 26541
(304) 879-5020

NAME: Debra Eddy
ADDRESS: 2-19-62
DATE: 5-18-11

℞ Flexeril 10 mg
1 tablet p.o.
q8° (#20)

☑ 1-24
☐ 25-49
☐ 50-74
☐ 75-100
☐ 101-150
☐ 151 and over
___ Units

☐ Label
Refill (NR) 1 2 3 4 5

Kay B Kelly RN FNP-BC
(Signature)

1CIM1353083

**Prescription 3:**

CHARLENE HORAN, M.D.
DEA # ___ LIC. # 12054(WV)
VALDELINE MUEHL, M.D.
DEA # ___ LIC. # 23895(WV)
KAY KELLY, F.N.P., -BC
DEA # ___ RXA 1128 EXP: 8/11
1929 MASON DIXON HIGHWAY
CORE, WV 26541
(304) 879-5020

NAME: Debra Eddy
ADDRESS: 2-19-62
DATE: 5-19-11

℞ Please excuse 5-19, 5.20.11
returning Monday
5-23-11 due to
low back sprain
& spasms.

☐ 1-24
☐ 25-49
☐ 50-74
☐ 75-100
☐ 101-150
☐ 151 and over
___ Units

☐ Label
Refill NR 1 2 3 4 5

Kay B Kelly RN FNP-BC
(Signature)

1CIM1353083

EXHIBIT 16
Witness Eddy
Date 6/19/12
Connie Nichols, Rptr.

# Exhibit J

WVUC -DNOT
Rev. 5-06

CASE NUMBER: R-2011-2631
DEBRA L EDDY
Page 1

**Board of Review**
**WORKFORCE West Virginia**
112 California Avenue
Charleston, West Virginia 25305
304-558-2636/1-800-635-0189   Fax: 304-558-1363

Edward R Kohout
Attorney at Law
2567 University Ave 2001
Morgantown WV  26505

**PARTIES**:                       Case Number: R-2011-2631  (R-1-E)

**Claimant**: DEBRA L EDDY
S.S. No.: XXX-XX-0664
Address: 7237 MASON DIXON HIGHWAY  BLACKSVILLE, WV 26521 0000

**Employer**: DOLGENCORP, LLC, DBA
Address: P O BOX 182366  COLUMBUS, OH  43218 0000

This case came on for hearing before F. Malcolm Vaughan, Administrative Law Judge, on July 27, 2011, in Morgantown, West Virginia.

APPEARANCES:

CLAIMANT appeared in person along with SARA CROSS, Witness, NICOLE HIXENBAUGH, Witness, and EDWARD R. KOHOUT, Attorney.  Employer made no appearance.

ISSUE:

The Claimant appealed from the decision of the deputy at Morgantown, West Virginia, and dated June 14, 2011, which held:  "Claimant disqualified beginning May 22, 2011, to indefinite; discharged for gross misconduct. Disqualified until claimant returns to covered employment and has worked therein at least thirty working days."

FINDINGS OF FACT:

1. The claimant worked for the above employer from August 25, 2005, to May 27, 2011.

2. The claimant was discharged on May 27, 2011, allegedly for removing merchandise from the employer's store without permission.

3. In reality, the claimant removed some very inexpensive items with the consent of her manager.  The reason for this was that the claimant pays only by use of a debit or credit card and had no cash or checks on her. Her actions were entirely approved and she is guilty of no misconduct.




EXHIBIT 10
Witness Biddle
Date 6/19/12
Connie Nichols, Rptr.

CASE NUMBER: R-2011-2631
DEBRA L EDDY
Page 2

4. The claimant was discharged from her employment with the above employer, but not for misconduct.

CONCLUSIONS OF LAW and DISCUSSION:

Chapter 21A-6-3(2) of the West Virginia Code provides that an individual shall be disqualified from receiving unemployment compensation benefits for the week in which she was discharged from her most recent work for misconduct and the six weeks immediately following such week. The Supreme Court of Appeals of West Virginia has defined misconduct to include a willful act on the part of an individual which is contrary to the best interest of the employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in job performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion, are not deemed to be misconduct within the meaning of the Code. The burden is on the employer to prove misconduct.

In an Unemployment Compensation Appeal, it is the burden of the employer to appear at the hearing and establish, by preponderance of properly introduced evidence, that the discharged employee was guilty of misconduct. The employer failed to appear at the hearing and no evidence of misconduct was introduced against the claimant.

The claimant credibly testified and gave every assurance that she was guilty of no misconduct. She had been given permission for her actions and intended to demonstrate this by use of the surveillance video which the employer declined to bring to the hearing even though it was subpoenaed.

There is no evidence of record indicating any sort of misconduct on the part of this claimant. The claimant is deemed guilty of no misconduct in connection with her separation from the above employer and cannot be disqualified from receiving Unemployment Compensation Benefits.

DECISION:

The decision of the deputy is reversed. The claimant is not disqualified. The claimant was discharged but not for misconduct.

This, the 8th day of August 2011.

