IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DEBRA L. EDDY,

             Plaintiff,

v.                          //    CIVIL ACTION NO. 1:11CV137
                                  (Judge Keeley)

SCOTT BIDDLE, an individual, LISA BARR,
an individual, and DOLGENCORP, LLC,
a foreign Limited Liability Company,

             Defendants.


MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]

    Pending before the Court is the defendants' motion for summary
judgment (dkt. no. 57). For the reasons that follow, the Court
**GRANTS IN PART** and **DENIES IN PART** the defendants' motion.

**I.**

    This action arises from the defendant, Dolgencorp, LLC's
("Dolgencorp"), termination of the plaintiff, Debra L. Eddy ("Eddy"
or "the plaintiff"), on May 27, 2011.[1] Dolgencorp, a limited
liability company that owns and operates Dollar General stores,
maintains that it fired Eddy for violating company policy when she
took certain merchandise from a Dollar General store in
Blacksville, West Virginia, without first paying for her items.
Eddy, in contrast, contends that her termination was the result of

_____

    [1] While the legal import of this date is subject to some
dispute, the parties do not contest that Eddy did not return to
work after May 27, 2011.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

the unlawful and discriminatory conduct of Dolgencorp and two other
employees, the defendant Scott Biddle ("Biddle"), who was Eddy's
supervisor, and the defendant Lisa Barr ("Barr"), who replaced her.

Eddy's tenure with Dolgencorp began on either August 25, 2005,
or September 25, 2005,[2] when she was hired as an Assistant Store
Manager ("ASM") of the Dollar General store located in Blacksville,
West Virginia. She was promoted to the salaried position of Store
Manager ("SM") of that store several months later, a position she
held until her termination.

As SM, Eddy bore the ultimate responsibility for the operation
of the Blacksville store. She was, in short, the one in charge. Her
responsibilities included the hiring, training, promotion, and
discipline of her subordinate employees, as well as the maintenance
of accurate inventory levels within her store. She was also
responsible for complying with and ensuring her subordinates'
compliance with the corporate policies of Dollar General. Of
particular relevance to this case is the Employee Purchase Policy
contained in both the Dollar General Employee Handbook as well as
Dollar General's Standard Operating Procedures. This policy, in
pertinent part, provides that "[a]ll merchandise must be paid for

---

[2] There is some confusion in the record as to the exact date.
Any discrepancy, however, is immaterial.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

before it leaves the store. Failure to ring up all merchandise could result in immediate termination for all involved employees." (Dkt. No. 58 at 7).

On May 1, 2010, Eddy hired Barr as Lead Sales Associate for the Blacksville store. Approximately two months later, on June 28, 2010, Dolgencorp hired Biddle as the Retail District Manager ("DM") of a group of seventeen Dollar General stores known as District No. 245, the district encompassing the Blackville store. As DM, Biddle's job was to supervise each of the SMs who were operating Dollar General stores within his district, including Eddy.

On the evening of May 18, 2011, well after the end of her early morning shift, Eddy went to the Blacksville store to purchase several items. Barr was working as the "manager on duty" that evening, and another employee, Sarah Cross, was working as the cashier. When Eddy brought her items to the sales counter for purchase, Cross advised her that the credit card machines were not working. Eddy set her items aside, went to her car, and then re-entered the store. On her return, she told Barr and Cross that, because she did not have any cash, she was going to take several items, i.e., heating pads and dog treats, and return the following day to pay for them.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

The next day, Eddy saw a physician for a pain in her back that she had been experiencing since earlier that month. Her doctor diagnosed a low back sprain and gave her a note that excused her from work through May 23, 2011. That night, Eddy went to the Blacksville store to drop off the note. She also called Biddle and advised him that she had left the doctor's note at the store and would be taking several days off. That day, May 19, 2011, she did not pay for the items she had taken the day before.

Three days after Eddy dropped off the doctor's note, on May 21, 2011, Barr asked Paula Cummins, who was then the ASM of the Blacksville store, if Eddy had paid for the items she had taken on May 18, 2011. From there, the information traveled quickly up the corporate chain. Cummins reported to Biddle that Eddy had taken merchandise from the store without prior payment. Biddle, in turn, reported the incident to the Regional Loss Prevention Manager, Lee Holcomb.

In response to Biddle's report, Holcomb visited the Blacksville store on May 23, 2011. His investigation consisted of meeting with several employees, including Barr, and reviewing the surveillance tapes of the night in question. After confirming that Eddy had indeed left the store without paying for several items, he told Biddle of his findings. At the direction of his Regional Human

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Resources Manager, from whom he sought advice, Biddle held off on
any further action until Eddy returned to the store and could make
a statement.

At some point during this time period, another employee told
Eddy that it was rumored she was going to be fired when she
returned to work. Subsequently, on May 26, 2011, after Holcomb's
investigation and while she was still on sick leave, the plaintiff
visited the store and paid for her merchandise. She officially
returned to work the next day.

When Eddy returned to the Blacksville store on May 27, 2011,
Biddle facilitated a phone conversation between her and Holcomb.
During that conversation, Holcomb advised Eddy that he had reviewed
the store's security footage and had seen her taking certain items
from the store without payment. After telling Holcomb she had, in
fact, paid for the items in question the day before, Eddy collected
her May 26, 2011 receipt and showed it to Biddle. At Holcomb's
direction, Biddle then asked Eddy to prepare a written statement,
which she completed voluntarily. In that statement, she admitted
that she had taken "heat wraps" from the store on May 18, 2011,
with the intention of paying for them on a later date. (Dkt. No.
57-8 at 2). Biddle relayed the contents of her statement to
Holcomb, who advised him to contact Human Resources. The Human

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Resources representative, in turn, recommended that Eddy be discharged. Thus, on May 27, 2011, Biddle terminated Eddy's employment with Dolgencorp. She was forty-nine years old.

Approximately one month after he terminated Eddy, Biddle approached two employees, Barr and Cummins, and told them that they could take an on-line test if they were interested in filling the vacant SM position. Cummins declined, but Barr took the test, passed, and was promoted to Eddy's former position. At the time of her promotion, Barr was forty-six years old.

Eddy filed the instant suit on July 29, 2011, in the Circuit Court of Monongalia County, West Virginia, alleging (1) common law wrongful discharge; (2) age discrimination; (3) defamation; (4) conspiracy; (5) outrage; (6) state and federal wage and hour law violations; and (7) West Virginia Wage Payment and Collection Act violations. The defendants timely removed this civil action under 28 U.S.C. §§ 1441 and 1446 on August 29, 2011, invoking this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. The defendants argue that there are no disputed issues of material fact for a jury to decide as to any of Eddy's claims, and they have accordingly moved for summary judgment on all counts. The motion is now fully briefed and ripe for review.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

## II.

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

## III.

Given the overlapping legal issues in several of Eddy's counts, the Court addresses her causes of action in logical order.

### A.   Wrongful Discharge

Eddy's first cause of action, entitled "Common Law Wrongful Discharge," alleges that she was discharged in violation of "[the defendants'] own Dollar General Handbook" because her termination (1) "was not warranted in [her] particular case," and (2) was in violation of the company policy of providing employees "a positive work environment" premised on "respect and opportunity." (Dkt. No. 9-1 at 6). According to the complaint, the totality of this conduct "was in violation of West Virginia Public Policy." Id. In their memorandum in support of summary judgment, the defendants refute that a purported violation of company policy - the only potential "West Virginia Public Policy" identified by the plaintiff in discovery - can serve as an exception to West Virginia's at-will employment doctrine.

In West Virginia, an employment relationship of indefinite duration is "presumed to be terminable at any time at the will of

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

the employer or of the employee, with or without cause." <u>Suter v.
Harsco Corp.</u>, 403 S.E.2d 751, 756 (W. Va. 1991). This general rule,
however, is "tempered by the . . . principle that where the
employer's motivation for the discharge contravenes some
substantial public policy principle, then the employer may be
liable to the employee for damages occasioned by this discharge."
<u>Harless v. First Nat'l Bank in Fairmont</u>, 246 S.E.2d 270, 275 (W.
Va. 1978). Accordingly, "a cause of action for wrongful discharge
exists when an aggrieved employee can demonstrate that his/her
employer acted contrary to substantial public policy in
effectuating the termination." <u>Swears v. R.M. Roach & Sons, Inc.</u>,
696 S.E.2d 1, 6 (W. Va. 2010) (quoting <u>Feliciano v. 7-Eleven, Inc.</u>,
559 S.E.2d 713, 718 (W. Va. 2001)).

In order to obtain relief for a claim of wrongful discharge in
contravention of substantial public policy, the plaintiff must
show:

(1) [Whether a] clear public policy existed and was
manifested in a state or federal constitution, statute,
administrative regulation, or in the common law (the
<u>clarity</u> element);

(2) [Whether] dismissing employees under circumstances like
those involved in the plaintiff's dismissal would
jeopardize the public policy (the <u>jeopardy</u> element);

(3) [Whether t]he plaintiff's dismissal was motivated by
conduct related to the public policy (the <u>causation</u>
element); and

9

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

> (4) [Whether t]he employer lacked an overriding business
> justification for the dismissal (the <u>overriding
> justification</u> element).

<u>Swears</u>, 696 S.E.2d at 6 (alterations and emphasis in original)

(quoting <u>Feliciano</u>, 559 S.E.2d at 723).

The burden is on the plaintiff to establish the existence of

a substantial public policy, <u>Roth v. DeFeliceCare, Inc.</u>, 700 S.E.2d

183, 190 (W. Va. 2010) (citation omitted), which is a "question of

law, rather than a question of fact for a jury." Syl. Pt. 1.,

<u>Cordle v. General Hugh Mercer Corp.</u>, 325 S.E.2d 111 (W. Va. 1984).

"It is only when a given policy is so obviously for or against the

public health, safety, morals or welfare that there is a virtual

unanimity of opinion in regard to it, that a court may constitute

itself the voice of the community so declaring." <u>Tiernan v.

Charleston Area Med. Ctr., Inc.</u>, 506 S.E.2d 578, 584 (W. Va. 1998).

As such, in order to "identify the sources of public policy for

purposes of determining whether a retaliatory discharge has

occurred," the Court looks to "established precepts in [West

Virginia's] constitution, legislative enactments, legislatively

approved regulations, and judicial opinions." Syl. Pt. 5, <u>Armstrong

v. W. Va. Div. of Culture and History</u>, 729 S.E.2d 860 (W. Va. 2012)

(quoting Syl. pt. 2, <u>Birthisel v. Tri-Cities Health Servs. Corp.</u>,

424 S.E.2d 606 (W. Va. 1992)).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Neither party disputes that Eddy was an at-will employee of Dolgencorp.[3] As such, the Court begins with the premise that she "may be terminated at any time, without reason, unless this termination violates some substantial public policy." Armstrong, 729 S.E.2d at 866. A private corporation's internal employment policy, particularly one so nebulous as the promise of a "positive work environment," does not qualify as the sort of clearly-defined "substantial public policy" found in West Virginia's "constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 5, Armstrong, 729 S.E.2d 860. As such, it cannot serve as the basis for a cause of action for wrongful discharge. See, e.g., Suddreth v. Maurices, Inc., 5:11-cv-00389, 2012 WL 275393, at *3 (S.D. W. Va. Jan. 31, 2012) (rejecting wrongful discharge claim premised on violation of company policy); see also Harshbarger v. CSX Transp., Inc., 478 F.Supp.2d 890, 895 (S.D. W. Va. 2006) (same).

---

[3] Notably, despite the tenor of some of the allegations in her complaint, Eddy does not contend that the Dollar General Employee Handbook altered her at-will status in any way. Given the clear disclaimers in the handbook itself (dkt. no. 77-4 at 3, 4) as well as her employment form (dkt. no. 57-5 at 3), such an attack would not have succeeded. See, e.g., Syl. Pt. 5, Suter, 403 S.E.2d at 756 ("An employer may protect itself from being bound by any and all statements in an employee handbook by placing a clear and prominent disclaimer to that effect in the handbook itself.").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Perhaps recognizing the inherent weakness of such an approach, Eddy posits an alternate theory in her response to the defendants' motion for summary judgment, contending that the defendants' actions contravened "the West Virginia Legislature's policy regarding unemployment compensation," i.e., W. Va. Code § 21A-1-1, et. seq. (Dkt. No. 77 at 11). In support, Eddy argues that a reasonable jury could find that her termination was "pretextual," as other employees purportedly violated the same or similar provisions of the employee handbook without termination, and that she was "denied unemployment compensation as a result." Id.

Eddy's alternate theory does not save her claim. As a threshold matter, she did not identify W. Va. Code § 21A-1-1 as the "substantial public policy" for her wrongful discharge claim either in the complaint or, according to the defendants, in any of the discovery exchanged in this case. See U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010) ("[I]t is well established that a plaintiff may not raise new claims after discovery has begun without amending his complaint." (citing Wahi v. Charleston Area Medical Center, Inc., 562 F.3d 599, 617 (4th Cir. 2009)). Further, she does not present any real argument or identify any authority for the proposition that West Virginia's unemployment compensation regime qualifies as a

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

"substantial public policy" under which a wrongful discharge claim can be pursued, a question of law that no West Virginia court appears to have addressed to date. Finally, and most importantly, she fails even to allege in her response brief that her dismissal was in any way "motivated by conduct related to the public policy" of unemployment compensation, much less point to any evidence that would allow a reasonable jury to infer that fact. <u>Swears</u>, 696 S.E.2d at 6 (quoting <u>Feliciano</u>, 559 S.E.2d at 723).[4]

In sum, even if the Court were to permit this new claim to proceed, it would necessarily fail in the absence of even a scintilla of evidence that Eddy's termination was somehow motivated by conduct related to her pursuit of unemployment benefits. The Court thus **GRANTS** summary judgment to the defendants on the plaintiff's wrongful discharge claim.

**B. Age Discrimination**

Eddy's second cause of action is that Dolgencorp fired her on account of her age, in violation of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 <u>et</u> <u>seq.</u> The defendants contend

---

[4] Moreover, as discussed in greater detail later in this opinion, her wrongful discharge claim also fails because Dolgencorp clearly had an "overriding business justification" for her dismissal, i.e., the fact that she removed merchandise from the store without prior payment. <u>Swears</u>, 696 S.E.2d at 6 (alterations and emphasis in original) (quoting <u>Feliciano</u>, 559 S.E.2d at 723).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

that Eddy has failed to point to any evidence that would support an inference of age discrimination and, in any event, they had a legitimate and nondiscriminatory reason to discharge her.

### i. Standard

Under the WVHRA, it is unlawful "[f]or any employer to discriminate against an individual with respect to . . . tenure, terms, conditions or privileges of employment[.]" W. Va. Code § 5-11-9(1). "The term 'discriminate' . . . means to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . age[.]" W. Va. Code § 5-11-3(h). Discrimination claims brought under the WVHRA are governed by the same burden-shifting analytical framework of Title VII of the Civil Rights Act of 1964, set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>See</u> <u>Barefoot v. Sundale Nursing Home</u>, 457 S.E.2d 152, 160 (W. Va. 1995).

The plaintiff bears the initial burden of establishing a <u>prima facie</u> case of discrimination. Syl. Pt. 2, <u>Young v. Bellofram Corp.</u>, 705 S.E.2d 560 (W. Va. 2010). In order to make a <u>prima facie</u> case, the plaintiff must offer proof of the following:

(1) That the plaintiff is a member of a protected class;

(2) That the employer made an adverse decision concerning the plaintiff;

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

(3) But for the plaintiff's protected status, the adverse decision would have been made.

Syl. Pt 3, <u>Conaway v. Eastern Associated Coal Corp.</u>, 358 S.E.2d 423 (W. Va. 1986). To establish the third element, a plaintiff must "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." <u>Id.</u> at 429-30 (internal footnote omitted). Examples of such evidence may include:

> an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others[,] by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

<u>Id.</u> (footnotes omitted).

If the plaintiff carries her <u>prima</u> <u>facie</u> burden, an inference of discriminatory conduct arises and "the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory [or nondiscriminatory] reason for the discharge." Syl. Pt. 5, <u>Young</u>, 705 S.E.2d 560 (quoting Syl. Pt. 4, <u>Birthisel v. Tri-Cities Health Services Corp.</u>, 424 S.E.2d 606 (W. Va. 1992)). The employer's proffered reason "is not required to be fair or honorable or even reasonable, so long as it is not discriminatory."

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

*Councell v. Homer Laughlin China Co.*, No. 5:11CV45, 2012 WL 907086, at *7 (N.D. W. Va. March 15, 2012) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)); *see also* *Holdcraft v. Cty. of Fairfax*, 31 F. App'x 97, 99 (4th Cir. 2002) ("The law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory."). In other words, "[t]he reason can be any other reason except that the plaintiff was a member of a protected class." *Conaway*, 358 S.E.2d at 430.

If the employer produces a legitimate and nondiscriminatory reason for its adverse employment action, it rebuts the inference of discrimination established by the plaintiff's *prima facie* case. *Councell*, 2012 WL 907086, at *7. The burden then shifts back to the plaintiff to prove that the "facially legitimate reason given by the employer for the employment-related decision is merely a pretext for a discriminatory motive." *Ford Motor Credit Co. v. West Virginia Human Rights Com'n*, 696 S.E.2d 282, 293 (W. Va. 2010) (citing Syl. pt. 2, *West Virginia Inst. of Tech.*, 383 S.E.2d 490 (W. Va. 1989)).

### ii. **Prima Facie** Case

The first step in the Court's analysis is to determine whether Eddy has sufficient *prima facie* evidence of age discrimination to

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

survive summary judgment. It is undisputed that she was forty-nine years old at the time of her termination and is, accordingly, a member of a protected class. W. Va. Code § 5-11-3(k) ("age" means anyone "the age of forty or above"). It is also clear that Dolgencorp made an adverse decision concerning her employment status when it discharged her from her position as SM. See, e.g., Young, 705 S.E.2d at 566. The Court's inquiry is thus limited to the third requirement of a prima facie discrimination case, i.e., whether Eddy can point to "some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class." Conaway, 358 S.E.2d at 429-30.

The plaintiff first argues that she meets the third prong of the prima facie test because her DM, Scott Biddle, was aware that she was not "as spry as a younger manager would be." (Dkt. No. 77 at 13). As support, she contends that, on May 19, 2011, she advised Biddle that she had a doctor's note which excused her from work for several days for what she described as a "fatigued muscle" in her back. (Dkt. No. 57-2 at 62). She also points to her own deposition testimony that she had previously reported to work "while suffering

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

from pneumonia as well as while recovering from carpal tunnel surgery." (Dkt. No. 77 at 13).[5]

This Court recently rejected a similar attempt to bootstrap an unrelated physical disability claim onto an age discrimination cause of action. In <u>Councell v. Homer Laughlin China Co.</u>, the plaintiff argued that she suffered from age and gender discrimination because she was terminated on the basis of a "medical condition" specific to "older female[s]." 2012 WL 907086, at *8. Nevertheless, she presented no evidence that her disabilities were age- or gender- specific, or that she had been treated any differently from any other employee with similar physical limitations. <u>Id.</u> This Court ultimately granted summary judgment to the defendant after determining that the plaintiff's

_____

[5] As discussed below, although the Court finds that these conditions are largely inapposite to the plaintiff's age discrimination claim, it would note that Eddy's full deposition testimony belies the contention that these conditions hindered her job performance:

Q:   Prior to your termination, did you have any problems performing your job?

A:   No. I went to work with pneumonia, I went to work with my back out, I had carpal tunnel surgery on my right hand and was back to work the next day.

(Dkt. No. 77-1 at 33).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

alleged physical disabilities were "not probative of age or gender discrimination." Id.

Eddy's complaints of activity-related back pain, pneumonia, and carpal tunnel suffer from the same deficiencies identified in Councell. Notwithstanding the fact that she has provided no time-frame or medical evidence detailing her pneumonia or carpal tunnel, Eddy also has failed to set forth any evidence that these conditions are age-specific (which they plainly are not) or even disproportionately present among individuals over forty. Most importantly, however, she has failed to provide even a scintilla of evidence that would link these purported disabilities either to her age or termination. The bare allegation that Biddle was aware Eddy was not particularly "spry" around the time of her discharge does not, standing alone, give rise to an inference of age discrimination. Accordingly, this argument does not advance her discrimination claim. See Councell, 2012 WL 907086, at *8.

The plaintiff next argues that she was "more qualified and efficient than her replacement," Lisa Barr. (Dkt. No. 77 at 13). She bases this contention on the fact that she "had been with Dollar General for six (6) years, while Ms. Barr, the woman who replaced Ms. Eddy, had only been with Dollar General for roughly

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

five (5) <u>months</u>." <u>Id.</u> (emphasis in original).[6] This bare
allegation, once again, does not give rise to a legitimate
inference of age discrimination. Most obviously, it stands to
reason that a replacement hire would generally have a smaller
employment history with a particular corporation than an outgoing
employee; the law, for obvious reasons, does not require an
employer to limit its replacement of employees to applicants with
equivalent experience. An employer, in other words, cannot be
exposed to liability "simply and solely because it elects to hire
a qualified young person when an older employee is terminated."
<u>Ratliff v. Gymboree Operations, Inc.</u>, No. 2:11-cv-00562, 2012 WL
2862567, at *4 (S.D. W. Va. July 11, 2012).

Here, the record reflects that Barr, who is three years
younger than Eddy, was a qualified replacement. Eddy herself
initially hired Barr as the Lead Sales Associate for the
Blacksville store. (Dkt. No. 57-2 at 103). She even characterized
Barr as a "good worker[]," one of two employees that Biddle "always
wanted" when he needed employees at the other Dollar General
stores. (Dkt. No. 57-2 at 101). One month after the plaintiff's

---

[6] Although it is not particularly relevant, it is notable that
Eddy herself only served as Dolgencorp's employee, albeit as an
ASM, for "[a] few months" before she was promoted to SM. (Dkt. No.
77-1 at 16).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

termination, Biddle approached both Barr and the Assistant Store Manager, Paula Cummins, and advised them to take an online test if they were interested in the SM position. (Dkt. No. 57-6 at 18). Cummins, whose husband was battling cancer, elected not to take the test. Id. Barr, however, took the test, passed it on her first try, and was promoted to SM. Id.

In the absence of any evidence indicative of an age-related ulterior motive, Dolgencorp's promotion of a qualified employee to fill Eddy's vacated position does not give rise to an inference of age discrimination simply because Barr is three years younger than Eddy. See, e.g., Ratliff, 2012 WL 2862567, at *4 (citing Smith v. Sears, Roebuck, and Co., 516 S.E.2d 275, 280–81 (W. Va. 1999) (plaintiff failed to show "any sort of nexus" between age discrimination and his termination, despite demonstrating, inter alia, that he was replaced by a younger employee)). As this argument does not demonstrate any link between Eddy's termination and her age, it too fails to sustain her employment discrimination claim.

Eddy's final argument in support of her prima facie case, that she was a "hard worker" who was fired for a "trivial" reason, is similarly ineffective. (Dkt. No. 77 at 13). In essence, she contends that she was such a dedicated employee that the only

possible motivation for her firing must have been her age. She thus attacks the defendants' proffered nondiscriminatory reason for her termination, i.e., the fact that she admittedly violated corporate policy by taking merchandise from the store without paying for it. Inasmuch as the Supreme Court of Appeals of West Virginia has identified "elimination of the apparent legitimate reasons for the decision" as one of the ways by which a plaintiff can establish her <u>prima</u> <u>facie</u> case, the Court will first consider this argument, which perhaps fits more naturally into the pretext analysis, in the context of her initial burden. <u>Conaway</u>, 358 S.E.2d at 430.

Although there appears to be some confusion in the pleadings concerning the exact version of the Dollar General Employee Handbook in effect at the time of Eddy's termination, the basic import remains the same. By uniform company policy, "[a]ll merchandise must be paid for before it leaves the store. Failure to ring up all merchandise could result in immediate termination for all involved employees." (Dkt. No. 58 at 7). Eddy testified that she was fully aware of this policy and, in fact, was tasked with enforcing it within in her store. (Dkt. No. 57-2 at 36, 32).

There is no dispute that Eddy violated this policy on May 18, 2011, when she took heating pads and dog treats from the Blacksville store without first paying for her merchandise. Indeed,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Eddy expressly admitted to this conduct in her signed statement
dated May 27, 2011. (Dkt. No. 77-7). As such, although she attempts
to minimize her infraction,[7] the bulk of Eddy's argument appears to
lie in comparing her conduct and treatment to that of her younger,
subordinate employees. Specifically, she points out that employees
at the Blacksville store, including Barr, "routinely removed food
and drinks from the shelves and consumed it before paying." (Dkt.
No. 77 at 2). As none of these employees were fired, she argues,
her own discharge was unwarranted and discriminatory.

The plaintiff's argument suffers from several fundamental
flaws. First and foremost, the proposed comparison between the
plaintiff and her subordinate employees is only probative if they
were differently treated while "engaged in similar conduct." W. Va.
Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency, Inc.,
329 S.E.2d 77, 85 (W .Va. 1985). The in-store consumption of food
and drink during work hours without prior payment is simply not

---

[7] Eddy's myriad arguments in this regard are largely
irrelevant to both the fact of her policy violation as well as her
age discrimination claim. For example, although Eddy repeatedly
emphasizes the low cost of the items she removed from the store,
there is clearly no de minimus exception to the requirement that an
employee must pay for the items that they purchase. Such an
exception, particularly for a corporation that markets itself as a
purveyor of extremely low-cost items, would surely swallow the
rule. Similarly, although the plaintiff complains that she was in
"dire need" of the heating pads (dkt. no. 77 at 5), there is no
such exception to the employee purchase policy.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

qualitatively similar to removing inventory from the premises
without prior payment. Eddy herself testified that she was unaware
of any situation in which an employee had admitted to actually
taking an unpurchased item from the store without being terminated.
(Dkt. No. 57-2 at 94).

The value of the plaintiff's proposed comparison is further
diminished by the fact that, as the SM of the Blacksville store,
she was tasked with enforcing the employee purchase policy. (Dkt.
No. 57-2 at 32). Far from fostering an environment of strict
compliance, Barr testified that Eddy expressly granted the
Blacksville employees permission to take certain consumables before
the registers opened for the day. (Dkt. No. 77-3 at 7). Although it
appears that Biddle had at least a vague idea that the employees
were engaging in this seemingly wide-spread conduct, id., Eddy has
pointed to no evidence demonstrating that any particular employee
was ever singled out or reported to the DM for these infractions,
a sharp contrast to her own situation.[8] Indeed, Eddy testified that
she would sometimes put money in the registers to cover her

_____

[8]    Although Eddy's brief states that she advised Biddle of
this problem, that characterization of her deposition testimony is
misleading. Eddy specifically testified she had only reported to
her DM her suspicions that two night employees, who subsequently
quit, were stealing store merchandise. (Dkt. No. 77-1 at 43). She
further testified that she was unable to obtain proof of her
suspicions. Id.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

subordinates' unpaid consumption of store food and drink if she was advised that "the DM was coming" to the store. (Dkt. No. 77-1 at 43). As such, given that the lax enforcement of this policy with respect to Eddy's subordinates appears to be largely her own doing, the Court is hard-pressed to find that Dolgencorp's alleged disparate treatment of the plaintiff and her subordinates is any way indicative of an age-related discriminatory motive.[9]

Finally, to the extent that Eddy attempts to minimize the conduct preceding her termination by pointing to the administrative decision to award her unemployment compensation, her argument carries no weight. Unemployment benefit decisions have no binding effect on this Court, <u>Osborne v. King</u>, 570 F.Supp.2d 839, 845–48 (S.D. W. Va. 2008), and such cases operate under a "more liberal"

---

[9] Eddy also testified that, in the ordinary case, Dolgencorp would issue three warnings prior to terminating an employee for a policy violation. (Dkt. No. 77-1). To the extent that she argues Dolgencorp's failure to follow its usual practice in her case is indicative of discriminatory intent, there is no evidence in the record that Dolgencorp ordinarily gave three warnings for a violation of the employee purchase policy, which clearly provides that "[f]ailure to ring up all merchandise could result in immediate termination for all involved employees." (Dkt. No. 58 at 7). Even if it did, however, the question before the Court is "not whether an employment decision was essentially fair or whether it was made in accordance with pre-established procedures. The question is whether the individual was discriminated against[.]" <u>Romney Hous. Auth. v. W. Va. Human Rights Comm'n</u>, 406 S.E.2d 434, 438 (W. Va. 1991). There is nothing in this record indicating that the plaintiff's age was in any way related to her termination.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

standard than claims for wrongful termination. <u>Slack v. Kanawha
County Housing and Redevelopment Agency</u>, 423 S.E.2d 547, 558 (W.
Va. 1992). Moreover, no employee of Dolgencorp appeared at the
hearing in question, and the decision itself reveals a fundamental
misunderstanding of the facts of this case: it recites that Eddy
"removed some very inexpensive items with the consent of her
manager" and that, as such, her actions were "entirely approved."
(Dkt. No. 77-10 at 2). As there is no dispute that the only two
employees at the store on December 18, 2011, were Eddy's
subordinates, not her managers, the unemployment award is wholly
unpersuasive.

In sum, the plaintiff must point to at least "some evidence
which would sufficiently link [Dolgencorp's] decision and the
plaintiff's status as a member of a protected class." <u>Conaway</u>, 358
S.E.2d at 429-30. None of the various arguments that Eddy has
proposed create a genuine issue of material fact with regard to any
causal connection between her termination and her age. Accordingly,
she has failed to establish a <u>prima facie</u> case of employment
discrimination.

### iii. Pretext

As a final comment, the Court notes that summary judgment on
this claim is warranted even if Eddy could establish a <u>prima facie</u>

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

case of age discrimination. It is undisputed that she violated
company policy when she removed certain items from the Blacksville
store without first paying for her merchandise, which is clearly a
qualifying nondiscriminatory reason for her termination. See, e.g.,
Prater v. Henry Schein, Inc., 621 F.Supp 2d 363, 367 (S.D. W. Va.
2008). Her attempts to paint this proffered reason as pretextual
largely echo those already disposed of above. She fails, however,
to adduce any evidence that it was discriminatory. Romney Hous.
Auth., 406 S.E.2d at 438 ("[T]he question is not whether an
employment decision was essentially fair or whether it was made in
accordance with pre-established procedures. The question is whether
the individual was discriminated against[.]").

   **C.   Defamation**

   Eddy's third cause of action is for the tort of defamation.
Specifically, she contends that her "reputation has been severely
damaged by false accusations of theft made and published by the
defendants." (Dkt. No. 77 at 14). She does not, however, clarify
the precise statements upon which she bases her claims. It appears
her case rests entirely upon her own testimony as to certain
comments that members of her community made to her based on what
they, in turn, had heard from various Dollar General employees. The
defendants, for their part, contend that none of the evidence

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

proffered by the plaintiff is sufficient to show either that a defamatory statement was made or that it was published by any of the defendants.

To the extent that Eddy's deposition offers any clarification of her claim, the Court agrees with the defendants that her allegations of defamation can be divided into the three categories: (1) that two persons, Belinda Myers and Molly Fetty, told Eddy an individual named Alisha Tennant, who was not an employee of Dollar General at the time of Eddy's termination, had advised them Eddy had been fired for "stealing laundry detergent" (dkt. no. 77-1 at 46); (2) that a man named Bill Vidas told Eddy that Barr had told him she would have Eddy's job "no matter what it took" (dkt. no. 77-1 at 47); and (3) that, "one time," a man named Bill Glasscock told Eddy that Barr "was telling that [Eddy] was stealing." (Dkt. No. 77-1 at 47).[10]

---

[10] Most of the plaintiff's summary judgment argument on this claim centers around the extent of her damages, which is, putting it mildly, placing the cart before the horse. To the extent she argues that she has been denied certain employment opportunities because she believes Dollar General has likely provided her with a bad reference, the Court simply notes that such speculation is wholly unsubstantiated by any evidence in the record and will not serve to prevent summary judgment. See Runnebaum v. NationsBank, 123 F.3d 156, 164 (4th Cir. 1997) (holding that "[u]nsupported speculation is not sufficient to defeat a summary judgment motion"); see also Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (holding that a non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT NO. 57]

Defamation is a false statement that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." <u>Belcher v. Wal–Mart Stores, Inc.</u>, 568 S.E.2d 19, 29 (W. Va. 2002). In order for a private plaintiff to sustain a defamation claim, she must establish "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. pt. 1, <u>Crump v. Beckley Newspapers, Inc.</u>, 320 S.E.2d 70 (W. Va. 1984).

The plaintiff's first allegation, that a woman named Alisha Tennant told certain individuals that Eddy had been fired for stealing, offers no support for a defamation claim against Dolgencorp, Biddle, or Barr. As the plaintiff has not joined Tennant as a defendant in this suit, she presumably seeks to impute this statement to Dolgencorp. Under West Virginia law, however, a legal entity accused of operating through its agents, e.g., a corporation or a limited liability company, "will not be liable for a libel published by one of its agents unless he was authorized thereto, or his acts subsequently ratified." <u>Miller v. City Hosp.,</u>

---

one inference upon another").

29

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Inc., 475 S.E.2d 495, 503 (W. Va. 1996) (quoting Barger v. Hood,
104 S.E. 280, 282 (W. Va. 1920)). Given that Eddy's sole testimony
concerning the connection between Tennant and Dolgencorp is that
Tennant was not employed by the latter at any time relevant to this
suit, the plaintiff has failed to meet her burden. (Dkt. No. 77-1
at 47).

Eddy's second allegation, that Barr allegedly told an
acquaintance of Eddy's that Barr would have Eddy's job "no matter
what it took," similarly fails to meet the prima facie elements of
a defamation claim. (Dkt. No. 77-1 at 47). Specifically, it is the
Court's duty to determine as a matter of law whether a statement is
"capable of a defamatory meaning," Belcher, 568 S.E.2d at 26
(quoting Long v. Egnor, 346 S.E.2d 778, 780 (W. Va. 1986)), i.e.,
whether it "reflect[s] shame, contumely, and disgrace" upon Eddy.
Syl. Pt. 1, Sprouse v. Clay Commc'n, Inc., 211 S.E.2d 674 (W. Va.
1975). The Court can conceive of no way that the proffered
statement could impugn Eddy's reputation, and the plaintiff herself
has provided none. Accordingly, this alleged statement also fails
to serve as the basis of a defamation claim.

Eddy's cause of action thus rests wholly on her third
allegation, the evidence of which, in its entirety, consists of the
following statement from her own deposition: "I had a Bill

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Glasscock tell me one time that [Barr] was telling that I was stealing, that I was giving customers bags of stuff for free." (Dkt. No. 77-1 at 47). Notwithstanding the fact that Barr unequivocally denies making any such statement, (dkt. no. 57-6 at 9), there is no indication of when or in what context the alleged statement was made, who "Bill Glasscock" is, or even if Barr published the allegedly defamatory statement to him or some other unidentified third party. Id. As such, even if this testimony somehow reached a jury, ensconced as it is in several layers of hearsay, no rational trier of fact could find that these objectively unsupported speculations suffice to raise a legitimate inference of defamation on the part of Barr or Dolgencorp. Runnebaum, 123 F.3d at 164 ("[u]nsupported speculation is not sufficient to defeat a summary judgment motion"); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) (unsupported allegations "do not confer talismanic immunity from Rule 56.").

At bottom, the basis for Eddy's defamation claim is that she believes an inaccurate characterization of her termination is known throughout her community, and that, ipso facto, the defendants must be responsible. She cannot, however, simply spin a genuine issue of material fact from her own unsupported and speculative testimony.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Cf. Shawkey v. Lowe's Home Centers, Inc., No. 2:09-cv-01264, 2011 WL 1229784, at *9 (S.D. W. Va. March 30, 2012) (granting summary judgment to the defendant where the plaintiff's "argument essentially boil[ed] down to the proposition that [the employer] 'must have' spread the word that Plaintiff was fired for theft because of the speed in which 'everybody knew.'"). As Eddy has failed to provide even a scintilla of evidence that the defendants made or published any defamatory statements about her, the Court **GRANTS** summary judgment to the defendants on her defamation claim.

### D.    Violation of Wage and Hour Laws

In the count of her complaint entitled "Violation of Wage and Hour Laws," Eddy alleges that the defendants violated "state and federal wage and hour laws" by failing to provide her with overtime compensation, making her work in the store alone, and paying her less than her male peers. (Dkt. No. 9-1 at 10). The defendants, although noting their confusion as to the precise causes of action the plaintiff pursues in this count, moved for summary judgment on the grounds that Eddy, as a managerial employee, was exempt from the overtime requirement of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213 et seq., and that she has adduced no evidence that she was paid less than any male SMs. Eddy failed to respond to these arguments, instead opting to pursue a single claim arising

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

under the West Virginia Minimum Wage and Maximum Hours Standards ("West Virginia Act"), W. Va. Code § 21-5C-1 <u>et</u>. <u>seq.</u> To the extent that this count originally asserted claims arising under the FLSA and WVHRA, then, the Court finds that Eddy has waived these arguments.

Turning instead to the West Virginia Act, it is clear beyond peradventure that it affords the plaintiff no relief. It is undisputed that over eighty percent of Dolgencorp's employees are subject to the FLSA, and as such, it does not qualify as an "employer" for the purposes of the West Virginia Act. <u>See</u> W. Va. Code § 21-5C-1(e) ("[T]he term 'employer' shall not include any individual, partnership, association, corporation, person or group of persons or similar unit if eighty percent of the persons employed by him are subject to any federal act relating to minimum wage, maximum hours and overtime compensation."). As the Supreme Court of Appeals of West Virginia has stated: "[i]f 80% of [an employer's] employees are covered by a federal act relating to minimum wage, maximum hours, and overtime compensation, [a plaintiff] is prevented from bringing his claim under state wage and hour law and must bring it instead under federal wage and hour laws." <u>Haney v. County Com'n, Preston County</u>, 575 S.E.2d 434, 437

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

(W. Va. 2002). The FLSA is the plaintiff's only avenue for overtime relief, and she has elected to abandon that argument.[11]

The West Virginia Act does not apply to Dolgencorp, and as such, Eddy's claim fails.[12] The Court therefore **GRANTS** summary judgment to the defendants on her "Violation of Wage and Hour Laws" claim.

### E.    Intentional Infliction of Emotional Distress

The Court next turns to Eddy's claim for intentional infliction of emotional distress ("IIED"), otherwise known as the tort of outrage. In support of this cause of action, Eddy identifies three acts she characterizes as outrageous: (1) Dolgencorp's termination of her for a single violation of company policy without first "writ[ing her] up three times for the same violation"; (2) Dolgencorp's failure to compensate her for her

---

[11] Notably, several courts in the Fourth Circuit, as well as this Court, have previously concluded that Dollar General SMs are managerial employees exempt from the overtime requirements of the FLSA. See 29 U.S.C. § 213(a)(1) ("any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the FLSA overtime requirement); see, e.g., Mayne-Harrison v. Dolgencorp, Inc., No. 1:09CV42, 2010 WL 3717604, at *24 (N.D. W. Va. Sept. 17, 2010).

[12] The Court has not considered any arguments raised in Eddy's unauthorized surreply, where she simply complains that it was "unfair" that she had to work an "infinite" number of hours, because it was filed without leave of Court. See L.R. Civ. P. 7.02(b)(3) ("Parties shall not file surreply memoranda except by leave of court.").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

many hours of overtime; and (3) Dolgencorp's alleged attempt to
fire her in 2007 in contravention of the Family Medical Leave Act
("FMLA"). (Dkt. No. 77 at 17-18).[13] The defendants contend that she
fails to raise a jury question as to any of the four prerequisites
for an IIED claim.

In order to establish a cause of action for outrage in West
Virginia, the plaintiff must show:

> (1) that the defendant's conduct was atrocious,
> intolerable, and so extreme and outrageous as to exceed the
> bounds of decency; (2) that the defendant acted with the
> intent to inflict emotional distress, or acted recklessly
> when it was certain or substantially certain emotional
> distress would result from his conduct; (3) that the
> actions of the defendant caused the plaintiff to suffer
> emotional distress; and, (4) that the emotional distress
> suffered by the plaintiff was so severe that no reasonable
> person could be expected to endure it.

Syl. Pt. 3, <u>Travis v. Alcon Labs., Inc.</u>, 504 S.E.2d 419, 425 (W.
Va. 1998). As to the first element, the plaintiff must demonstrate
that the conduct complained of is "so outrageous in character, and

---

[13] Curiously, although it is a prominent theme throughout her
pleadings, Eddy does not identify the conduct underlying Biddle and
Barr's alleged conspiracy to orchestrate her termination as
outrageous conduct. Regardless, the sole evidence the plaintiff has
adduced in support of her conspiracy theory is (1) her own
unsubstantiated testimony relaying Barr's purported defamation,
which the Court has already rejected, (2) the fact that Holcomb
interviewed Barr during his investigation, which is wholly
innocuous, and (3) an allegedly "suspicious" meeting between Biddle
and Barr on May 27, 2012, which is entirely speculative. (Dkt. No.
77 at 15-16). Such weak and unsubstantiated allegations cannot give
rise to a claim for IIED.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Keyes v. Keyes, 392 S.E.2d 693, 696 (W. Va. 1990) (emphasis omitted) (quoting Harless v. First National Bank in Fairmont, 289 S.E.2d 692, 703–04 n.20 (W. Va. 1982)). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." Hatfield v. Health Mgmt. Assocs. of W. Va., 672 S.E.2d 395, 404 (W. Va. 2008).

Further, in the employment context, the West Virginia Supreme Court of Appeals has distinguished claims for wrongful discharge from outrage claims as follows:

> [W]hen the employee's distress results from the fact of his discharge — e.g., the embarrassment and financial loss stemming from the plaintiff's firing — rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach. When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Syl. Pt. 2, <u>Dzinglski v. Weirton Steel Corp.</u>, 445 S.E.2d 219 (W. Va. 1994) (emphasis added), <u>modified on other grounds by</u> <u>Tudor v. Charleston Area Med. Ctr., Inc.</u>, 506 S.E.2d 554 (W. Va. 1997).

Eddy first alleges that Dolgencorp and Biddle acted outrageously when they terminated her for a single violation of company policy. The gravamen of this theory is the allegedly insufficient rationale for Dolgencorp's outright termination of her employment, as opposed to the means employed to effect her discharge. <u>See</u> <u>Hosaflook v. Consolidation Coal Co.</u>, 497 S.E.2d 174, 185 (W. Va. 1997). Indeed, she testified that the employees involved in her termination, i.e., Biddle and Holcomb, were "cordial" on the day she was fired and that she did not believe Biddle otherwise intended to "hurt [her] feelings." (Dkt. No. 77-1 at 44). These allegations sound primarily in wrongful discharge, not intentional infliction of emotional distress. <u>Cf.</u> <u>Councell</u>, 823 F.Supp.2d at 384 ("[T]he actual act of terminating an employee for an invidious cause cannot be grounds for 'outrageous' conduct under West Virginia law." (citing Syl. Pt. 2, <u>Dzinglski</u>, 445 S.E.2d 219)).

Moreover, to the extent that this claim rests in Dolgencorp's failure to employ graduated discipline prior to her discharge, it is well-established that "conduct that is merely annoying, harmful

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." <u>Courtney v. Courtney</u>, 413 S.E.2d 418, 423 (W. Va. 1991) (footnote omitted). At most, Eddy has alleged that the defendants' conduct was "harmful of [her] rights or expectations" to graduated discipline and continued employment. <u>Id.</u> It is plain, however, that Dolgencorp acted within its legal right to discharge its at-will employee "at any time, without reason." <u>Armstrong</u>, 729 S.E.2d at 866; <u>see generally Restatement (Second) of Torts</u> § 46 cmt. g ("The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."). The Court therefore finds, as a matter of law, that Dolgencorp's legitimate exercise of its discretion to terminate Eddy without graduated discipline cannot reasonably be considered outrageous conduct. <u>See Hatfield</u>, 672 S.E.2d at 404.

Eddy next argues that it was outrageous that she was "forced" to work an unprecedented number of hours without overtime compensation, "even if she was ill." (Dkt. No. 77 at 17-18). There is no evidence, however, that anyone, much less the defendants, actually "forced" her to work extended days. Moreover, Eddy herself testified that Dolgencorp never refused to grant her medical leave

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

when she presented a doctor's note. (Dkt. No. 77-1 at 35). The plaintiff's conclusory and overly dramatic characterization of her salaried position - a position that disqualifies her from statutory overtime compensation[14] - does not suffice to establish conduct so "outrageous" and "extreme" as to "go beyond all possible bounds of decency." <u>Keyes</u>, 392 S.E.2d at 696. Accordingly, as a matter of law, the Court finds that Dolgencorp's failure to gift the plaintiff with the overtime compensation she was not legally entitled to receive cannot reasonably be considered outrageous. <u>See</u> <u>Hatfield</u>, 672 S.E.2d at 404.

The plaintiff's final argument is that, "in 2007," the defendants committed "another outrageous act" when they attempted to fire her for taking FMLA leave. (Dkt. No. 77 at 18). Again, this argument is both wholly unsupported by the record and substantively frivolous. The statute of limitations for a cause of action for IIED is two years, W. Va. Code 55-2-12, which begins to run from the date of the offensive act. <u>Noe v. Bentley</u>, No. 3:05CV56, 2006 WL 231483, at *3 (N.D. W. Va. Jan. 31, 2006). As this suit was

---

[14] As discussed earlier, it is undisputed that over eighty percent of Dolgencorp's employees are subject to the FLSA; as such it does not qualify as an "employer" for the purposes of the West Virginia Minimum Wage and Maximum Hours Act. <u>See</u> W. Va. Code § 21-5C-1(e). Further, the plaintiff does not dispute that Eddy, as a managerial employee, was exempt from the FLSA overtime requirement. <u>See</u> 29 U.S.C. § 213(a)(1).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

filed in 2011, any cause of action premised on an alleged FMLA violation occurring in 2007 is now time-barred.

Eddy has thus failed to identify any "outrageous" acts for the purposes of the first element of the tort of outrage. <u>See</u> Syl. Pt. 3, <u>Travis</u>, 504 S.E.2d at 425. Even if she had, however, her claim would still fail. As noted above, the Supreme Court of Appeals of West Virginia has found that "no claim for intentional infliction of emotional distress can attach" where an employee's distress results from "the fact of h[er] discharge — e.g., the embarrassment and financial loss stemming from the plaintiff's firing — rather than from any improper conduct on the part of the employer in effecting the discharge." Syl. Pt. 2, <u>Dzinglski</u>, 445 S.E.2d 219. As Eddy herself testified in her deposition,

> Q: What actions caused this harm, this emotional harm?
> A: Well, I live in a mobile home that has no septic, no water, no utilities other than electric, because of the welfare office paid the money on it. I have a car that's falling apart because I can't afford to fix it.
> Q: So it's the financial impact as opposed to any specific thing that was said to you or done to you.
> A: Yes.

(Dkt. No. 77-1 at 49). Given this testimony, it is plain that Eddy's distress results from the "financial loss" of her discharge, and as such, "no claim for intentional infliction of emotional distress can attach." Syl. Pt. 2, <u>Dzinglski</u>, 445 S.E.2d 219.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

In sum, Eddy has failed to identify any conduct or acts of the defendants which may "reasonably be considered outrageous." Hatfield, 672 S.E.2d at 404. Moreover, her own testimony reveals that her emotional distress is not a result of the defendants' conduct, but the fact of the termination itself. Syl. Pt. 2, Dzinglski, 445 S.E.2d 219. The Court thus **GRANTS** summary judgment to the defendants on the IIED claim.

**F.   Conspiracy**

Eddy's cause of action for conspiracy against all the defendants alleges that they conspired together to deprive her of her position as SM of the Blacksville store. (Dkt. No. 9-1 at 8-9). Notably, however, "[a] civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Syl. Pt. 9, Dunn v. Rockwell, 689 S.E.2d 255 (W. Va. 2009). In the absence of any underlying tort claim, then, Eddy's conspiracy claim necessarily fails. See O'Dell v. Stegall, 703 S.E.2d 561, 596 (W. Va. 2010) (dismissing civil conspiracy claim after the other causes of action in the complaint failed). Accordingly, as the Court has already dismissed all of the claims that allege wrongdoing on the part of

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Biddle or Barr, it **GRANTS** summary judgment to the defendants on the plaintiff's conspiracy claim.

### G.    Wage Payment and Collection Act

Finally, Eddy alleges that Dolgencorp[15] violated the West Virginia Wage Payment and Collection Act ("WPCA") when it did not pay her in full "within seventy-two hours" of her discharge. W. Va. Code § 21-5-4(b). Eddy contends that her termination was effective on May 27, 2011, the day Biddle actually told her she was fired. As she was not paid in full until June 8, 2011, twelve days later, she maintains that Dolgencorp violated the WPCA.

Dolgencorp, however, contends that Eddy advised Biddle on May 27, 2011, that she would be contesting her termination via Dollar General's employee discrimination hotline, the Employee Response Center ("ERC"), which rendered her termination administratively ineffective "until the ERC concluded its investigation into Plaintiff's claims." (Dkt. No. 57-1 at 19). According to Dolgencorp, Eddy did not place this call for several days, and the investigation consequently did not conclude until June 8, 2011. <u>Id.</u> As Eddy was paid in full that same day, it contends that her WPCA claim must fail.

---

[15] Other than the former defendant Dollar General Corporation, which has already been dismissed from this case, Dolgencorp is the only defendant named in this count. (Dkt. No. 9-1 at 10).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

The WPCA, W. Va. Code § 21-5-1 <u>et. seq.</u>, "controls the manner in which employees in West Virginia are paid wages." <u>Gress v. Petersburg Foods, LLC</u>, 592 S.E.2d 811, 814 (W. Va. 2003). To this end, it prescribes certain time limits within which employers are required to pay wages upon their employees' separation from employment. If an employee is "discharged," which the regulations define as "any involuntary termination or the cessation of performance of work by employee due to employer action," W. Va. C.S.R. § 42-5-2.8, the WPCA requires employers to "pay the employee's wages in full within seventy-two hours." W. Va. Code § 21-5-4(b). "Wages," in turn, are defined as "compensation for labor or services rendered by an employee" and include "accrued fringe benefits capable of calculation and payable directly to an employee." <u>Id.</u> § 21-5-1(c). If a corporation fails to adhere to the requirements of the WPCA, it "shall, in addition to the amount which was unpaid when due, be liable to the employee for three times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e).

There is no dispute that Eddy was "discharged" under the plain meaning of the statute and thus was entitled to be paid in full within seventy-two hours.  W. Va. Code § 21-5-4(b). The sole issue here is whether Eddy was discharged on May 27, 2011, the day she was terminated by Biddle and her last day of work at the Blacksville

store, or on June 8, 2011, the day her discharge became "effective" in Dolgencorp's system.

In support of its argument, Dolgencorp points out that Eddy testified that, when she called the ERC after May 27, 2011, it advised her she was still considered an active employee. (Dkt. No. 57-2). It also argues that her status as an active employee through June 8, 2011, made her eligible for a quarterly bonus, paid in full on June 10, 2011, which was "an amount [that] would not have vested and to which Plaintiff would not have been entitled had her employment with Dolgencorp ended earlier as alleged." (Dkt. No. 57-1). As such, Dolgencorp contends, the plaintiff "was not terminated until June 8, 2011, effective May 27, and . . . received all compensation due within 72-hours of June 8." (Dkt. No. 78 at 12).

Eddy responds that she "was not allowed to work" for Dolgencorp after May 27, 2011, and that on June 8, 2011, she "received compensation for the work she had completed up to May 27, 2011, but not until June 8, 2011." (Dkt. No. 77). She also testified in her deposition that her insurance was cancelled as of May 27, 2011. (Dkt. No. 57-2 at 106). Although Dolgencorp reiterated in its reply that Eddy was nonetheless an "administratively active employee" until June 8, 2011, it did not dispute the accuracy of Eddy's allegations. (Dkt. No. 78 at 12).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Neither party has provided any authority for their respective positions, which boil down to the legal question of the meaning of "discharge" within the WPCA. Notably, the WPCA is "remedial legislation designed to protect working people and assist them in collection of compensation wrongly withheld," <u>Meadows v. Wal-Mart Stores, Inc.</u>, 530 S.E.2d 676, 688 (W. Va. 1999) (quoting <u>Mullins v. Venable</u>, 297 S.E.2d 866 (W. Va. 1982)), and must be "constru[ed] . . . liberally so as to furnish and accomplish all the purposes intended." <u>Meadows</u>, 530 S.E.2d 676 (quoting <u>State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.</u>, 461 S.E.2d 516, 523 (W. Va. 1995)). The statute itself plainly provides that "[w]henever a person, firm or corporation discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours." W. Va. Code § 21-5-4(b). As noted, the regulations define "discharge" as "an involuntary termination <u>or the cessation of performance of work</u> by employee due to employer action." W. Va. C.S.R. § 42-5-2.8 (emphasis added). The regulations further elaborate that "[a]n employee who is discharged shall be paid all wages including fringe benefits within seventy-two (72) hours of the <u>employee's final hour of employment</u>." W. Va. C.S.R. § 42-5-13.1 (emphasis added).

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
### [DKT NO. 57]

Dolgencorp's "administratively active" theory finds no support in either the plain language the statute or its accompanying regulations. The regulations, for example, speak in terms of "cessation of performance of work," not the cessation of an employee's "active" status within her employer's computer system. W. Va. C.S.R. § 42-5-2.8. An "employee's final hour of employment," too, bears little relation to the hour an employer decides to remove the employee from its "active" rolls. W. Va. C.S.R. § 42-5-13.1. Indeed, there is no indication that the statute or its regulations mean anything other than what they say – that an employee is entitled to receive her wages within seventy-two hours of the date her employer causes her to cease working.

From a policy perspective, moreover, Dolgencorp's proposed interpretation would permit knowledge of the official "discharge" date under the WPCA to be held within the exclusive province of employers, making it more difficult for employees to decide whether to pursue wage payment claims and, consequently, undermining the statute's primary purpose of "protect[ing] working people and assist[ing] them in collection of compensation wrongly withheld." Meadows, 530 S.E.2d at 690. It is also easy to see how any number of employers could capitalize on Dolgencorp's nebulous, criteria-free theory in order to "investigate" an employee's discharge, while

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

delaying payment of her wages, for far longer than the twelve days at issue in this case. Again, such an interpretation of the statute would frustrate the fundamental purposes of the WPCA. See id.

The WPCA is mandatory: "An employer <u>must</u> pay earned wages to its employees." <u>Szturm v. Huntington Blizzard Hockey Assocs. Ltd. P'ship</u>, 516 S.E.2d 267, 273 (W. Va. 1999) (emphasis added). The statute itself "may not in any way be contravened or set aside by private agreement," W. Va. § 21-5-10, and it follows that it cannot be avoided by an internal corporate policy of delaying administrative termination pending the investigation of an employee complaint. Accordingly, Dolgencorp's allegation that the "quarterly bonus" it gave Eddy would not have been owed had she been "officially" discharged on May 27, 2011, even if true, does not permit it to escape liability. There is no provision in the WPCA that exempts an employer from its mandatory obligations for electing to provide, or mistakenly providing, an employee with an unwarranted bonus in lieu of her statutory right, i.e., her "wages in full" within seventy-two hours of her discharge. W. Va. Code § 21-5-4(b); <u>cf.</u> W. Va. § 21-5-10 ("the acceptance by an employee of a partial payment of wages shall not constitute a release as to the balance of his claim and any release required as a condition of such payment shall be null and void").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

Here, the parties do not dispute that Eddy did not return to
the Blackville store after May 27, 2011. They further do not dispute
that she did not ultimately receive her regular salary for the days
between May 27, 2011 and June 8, 2011. As the plaintiff was thus
neither working nor earning a salary after May 27, 2011, it is plain
that she had "ce[ased] . . . performance of work," W. Va. C.S.R.
§ 42-5-2.8, and had consequently been "discharg[ed]." W. Va. Code
§ 21-5-4(b). By all accounts, then, summary judgment is appropriate
on this claim, but in favor of Eddy. Dolgencorp's motion is thus
**DENIED** as to the WPCA claim.

The Court has the authority to <u>sua</u> <u>sponte</u> "grant summary
judgment to the nonmovant" so long as it provides the moving party
with "notice and a reasonable opportunity to respond." Fed. R. Civ.
P. 56(f). Here, Dolgencorp itself raised – and fully briefed – its
position as to the operative date of Eddy's "discharge" under the
WPCA. <u>See</u> <u>Kannady v. City of Kiowa</u>, 590 F.3d 1161, 1171 (10th Cir.
2010) ("When a district court's <u>sua</u> <u>sponte</u> determination is based
on issues identical to those raised by a moving party, the risk of
prejudice is significantly lowered[.]'"). Accordingly, Dolgencorp
has had a full and fair opportunity to come forward with all of its
evidence concerning the date of Eddy's statutory termination. <u>See</u>
<u>Celotex</u>, 477 U.S. at 326 (1986) ("district courts are widely

acknowledged to possess the power to enter summary judgments <u>sua
sponte</u>, so long as the losing party was on notice that she had to
come forward with all of her evidence"). The record before the
Court is complete, and there are no facts, much less material ones,
that are in dispute.

The Court has already determined that Dolgencorp "discharged"
Eddy on May 27, 2011, and did not pay her wages in full until June
8, 2011. This is a plain violation of the seventy-two hour
provision of W. Va. Code § 21-5-4(b). As such, given the fully
developed record and the narrow legal issue presented by the
parties, the Court finds it appropriate to <u>sua</u> <u>sponte</u> **GRANT** summary
judgment to Eddy on her WPCA claim. <u>See</u> <u>Anderson v. Wachovia Mortg.
Corp.</u>, 621 F.3d 261, 280 (3d Cir. 2010) ("'[t]he notice requirement
is satisfied when a case involves 'the presence of a fully
developed record, the lack of prejudice, [and] a decision based on
a purely legal issue.'").

The damages for this claim are fairly straightforward,
inasmuch as the statute dictates that an employer in violation of
W. Va. Code 21-5-4 is liable for "the amount which was unpaid when
due," which Dolgencorp has already paid, as well as "three times
that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e).
Based on the records submitted with the summary judgment briefing,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

(dkt. no. 57-10 at 2), this figure should be readily calculable. The Court will, nevertheless, defer any determination of these issues to the parties, or the judgment of a jury.

**IV.**

In conclusion, for the reasons stated above, the Court:

1.  **GRANTS IN PART** the defendants' motion for summary judgment (dkt. no. 57) as to the plaintiff's wrongful discharge, age discrimination, defamation, conspiracy, outrage, and wage and hour claims, and **DISMISSES** those claims **WITH PREJUDICE;**

2.  **DENIES IN PART** the defendants' motion for summary judgment (dkt. no. 57) as to the plaintiff's WPCA claim;

3.  **GRANTS** summary judgment to the plaintiff, <u>sua</u> <u>sponte</u>, as to her WPCA claim;

4.  **DISMISSES** the defendants Scott Biddle and Lisa Barr **WITH PREJUDICE;** and

5.  **ORDERS** that the plaintiff's unauthorized surreply (dkt. no. 79) be **STRICKEN** from the record.

This case remains on the Court's trial docket and is scheduled as the second case on Tuesday, January 15, 2013.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[DKT NO. 57]**

It is so **ORDERED**.

The Court directs the Clerk of Court to transmit copies of this Order to counsel of record.

DATED: January 4, 2013.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE